DICKINSON, Justice,
for the Court:
¶ 1. A Yalobusha County jury found Curtis Sea not guilty on three counts of statutory rape and one count of sexual battery, but guilty on five counts of sexual battery. Without filing a pretrial motion or obtaining a ruling on the issue, Sea’s counsel introduced evidence of his own client’s two prior criminal convictions— both of which had occurred approximately twenty-five years prior to trial. Evidence of a party’s prior criminal conduct, the confinement for which ended more than ten years earlier, is not admissible to impeach credibility, unless the trial court makes certain findings (which were not even requested in this case). Additionally, Sea’s counsel sat silent as the State introduced into evidence four videotapes of damaging forensic interviews of the four victims.[1] Sea now claims his trial counsel was ineffective. We agree.
BACKGROUND FACTS AND PROCEDURAL HISTORY
¶ 2. During 2006 and 2007, Lashawn Joyner and her four daughters, D.D., B.J., T.J., and A.W,[2] lived with D.D.’s father, David Delaney, under less than wholesome circumstances. Delaney admitted at trial that he produced pornographic movies for *616 a living, some of which were viewed by at least two of the children. When Lashawn was at work or school, she would often leave the girls with her aunt, Ollie May Joyner, who lived with Curtis' Sea.
¶ 3. One day, upon finding the kids “kind of on top of each other,” Lashawn asked what was going on. When B.J. replied, “[w]e are doing nasty stuff,” which she said Sea had shown them how to do, La-shawn contacted the authorities. The girls were taken to Baptist Memorial Hospital in Oxford where a physician examined the girls, but found “no tearing or any signs of abuse.” The girls were then taken to Oxford Family Crisis Services, where forensic interviews of each child were videotaped. During the interviews — comprised almost entirely of leading and suggestive questions — the children made numerous incriminating statements about Sea.
¶ 4. The Yalobusha County grand jury handed down a nine-count indictment charging Sea with statutory rape and sexual battery. At trial, before the prosecutor called the children to testify, the trial judge individually questioned each child in chambers to determine whether they understood the taking of an oath and the obligation to be truthful. Then the children were called to testify, providing a “yes, sir” or “no, sir” answer to virtually every question. They admitted knowing that their mother’s boyfriend, Darryl, made movies of naked people. A.W. testified that she had seen the movies, and that they were about people having sex. Also, the girls acknowledged getting into trouble for taking their clothes off while playing with a friend.
¶ 5. Police Officer A.J. Hernandez, having interviewed the girls at the hospital, testified over a defense objection[3] that the girls had indicated they had been molested. Hernandez also testified that he had been present when Family Crisis Services in Oxford had conducted videotaped interviews of the girls; he identified the four videotapes, the prosecutor offered them into evidence, and the court admitted them without objection.
¶ 6. After the prosecutor asked several more questions, he requested permission to play the videotapes for the jury. Sea’s counsel stated on the record, “Your Honor, for the record, I realize this has been discussed in chambers to some extent, for the record, the defense objects to the admissibility to the tapes as inadmissible hearsay.”[4] The court overruled the objection, and the tapes were played for the jury.
¶ 7. After the State rested, the defense began its case-in-chief by calling Sea and asking him questions about his prior criminal conduct. Sea admitted that, in 1984, he had pleaded guilty to molesting a child under thirteen years of age. When confronted on cross-examination with documents indicating he had pleaded guilty in 1988 to an indictment for molesting another child under the age of thirteen, he at first denied it, but then testified, “If I did, I forgot about it. I’m not denying nothing. *617 I just said I forgot about it.” To this exchange concerning a second twenty-five-year-old conviction, Sea’s counsel offered no objection.
¶ 8. The jury acquitted Sea on three statutory-rape charges and one county of sexual battery, but found him guilty of five counts of sexual battery. The trial court sentenced him to serve twenty-five years for each count, to run concurrently. Sea obtained new counsel and now appeals, raising the following three issues: (1) Whether the tender-years exception to the hearsay rule was properly applied; (2) whether the verdict was contrary to the overwhelming weight of the evidence; and (3) whether Sea’s trial counsel was ineffective.
ANALYSIS
I. The videotapes
¶ 9. Sea claims the trial court committed reversible error by allowing the prosecutor to play the videotapes for the jury. But because his counsel failed to make a contemporaneous objection when the tapes were introduced, he waived any objection to their content,[5] and this issue— although instructive on the issue of his counsel’s effectiveness — has no merit.
II. Overwhelming weight of the evidence
¶ 10. Sea next argues that his convictions were against the overwhelming weight of the evidence, and that the trial judge should have granted a new trial. But we have stated clearly that we “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”[6] We also have said that
the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict.[7]
¶ 11. In this case, the convictions are amply supported by the testimony of all four of the children and the incriminating content of the videotapes. Thus, this issue has no merit.
III.Ineffective assistance of counsel
¶ 12. Sea next claims his counsel was ineffective, a claim we must analyze under the guidelines in Strickland v. Washington,[8] An appellant must demonstrate that the lawyer’s “performance was deficient, and that ... the deficiency prejudiced” the appellant.[9] Further, we carefully review the context of counsel’s actions and, where reasonable under the circumstances, we presume that the “decisions were sound trial strategy.”[10]

Prior Convictions

¶ 13. In discovery, Sea’s counsel asked the State to produce Sea’s criminal record *618 “if proposed to be used to impeach....” The State’s response disclosed a prolific criminal background, including a conviction for sexual battery in 1984, for which Sea was ordered to serve eighteen months, and another conviction for sexual battery in 1989, for which he was ordered to serve eight months. The latter offense, according to the indictment, involved a minor child under the age of thirteen. After receiving this information, Sea’s counsel did not file a motion to exclude the prior convictions, and the trial judge did not conduct a hearing on their admissibility.
¶ 14. After the State rested its case-in-chief, Sea’s counsel called him to testify, and then announced: “I’m going to ask you about a couple of prior convictions that you have.” He then proceeded to ask Sea about his 1984 and 1988 convictions, including details of the crimes. The prosecutor’s cross-examination of Sea on these prior crimes — one of which had occurred twenty-five years earlier, and the other, twenty-one years earlier — consumed sixteen pages of transcript.
¶ 15. When a criminal defendant chooses to testify, his prior criminal convictions may — under limited circumstances — be introduced for impeachment purposes. However, under our rules of evidence,
[ejvidence of a conviction ... is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for the conviction, whichever is the later date unless the court determines in the interests of justice that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect.
¶ 16. The balancing test under this rule is much more difficult than the traditional balancing test under Rule 403. Under Rule 609(b), it is not enough for the prosecutor to show that the probative value of the prior conviction outweighs its prejudicial effect; the trial judge must determine the probative value substantially outweighs the prejudicial effect of the pri- or conviction.
¶ 17. These prior convictions — and their attendant periods of incarceration— greatly exceeded the rule’s ten-year threshold, requiring the trial judge to conduct the Rule 609 balancing test. The convictions were not admissible unless the court found that the prejudice created by the convictions was substantially outweighed by their probative value. But Sea’s counsel filed no motion for exclusion of the convictions, so the trial court made no such finding.
¶ 18. The State does not deny that Sea’s counsel was ineffective for introducing the convictions, but rather responds that Sea has failed to demonstrate he was prejudiced. We disagree.
¶ 19. This is not a case of overwhelming physical evidence; there was no physical evidence of sexual abuse. To the contrary, the physician’s examination of the children revealed no evidence of sexual abuse. The case was essentially Sea’s word versus the testimony of his accusers. And while there were four accusers, their trial testimony came almost entirely from the mouth of the prosecutor, with the children responding “yes, sir” or “no, sir.” A cursory reading of the excerpts of the children’s testimony in the dissenting opinion may suggest otherwise, but a closer look confirms that this is true. Paragraphs 26 and 27 of the dissent contain trial testimony, and the only answers are “yes” and “no.” Paragraph 28 is from the videotapes. Paragraph 29 is trial testimony, and there the child obediently answers “yes, sir” and “no, sir” exclusively. Paragraph 30 is from the videotapes. Paragraphs 31 and *619 32 reproduce trial testimony, and once again — with one exception (“Move up and down.”) — every answer is either “yes” or “no.” Paragraph 33 is from the videos. So these “extensive excerpts from their testimony”[11] confirm that, had the jury not seen the videotapes, the only evidence against Sea would have been, essentially, from the mouth of the prosecutor.
¶ 20. Under these circumstances, evidence of Sea’s prior convictions for sexual battery — one involving a child under thirteen years of age — was incendiary. This Court has stated “[ejvidence which is incompetent and inflammatory in character carries with it a presumption of prejudice.” [12]

The Videotapes

¶ 21. Additionally, we note that Sea’s counsel failed to object to the introduction of the videotaped interviews of the four victims. The tapes were rife with hearsay statements from both the victims and the interviewers. Not only did Sea’s counsel fail to object contemporaneously to the admission of the videotapes, but he failed to request a hearing as required by our rules of evidence.[13]
¶ 22. Sea also complains that his trial counsel erred by failing to seek an instruction for gratification of lust as a lesser-included offense of sexual battery. However, Sea’s theory of the case was that he never had any sexually inappropriate contact with the children. We have said that “trial counsel’s decision to not request a jury instruction falls under the category of trial tactics, which are not subject to review.”[14] This assignment of error has no merit.
CONCLUSION
¶ 23. Because Sea’s counsel was ineffective, we reverse the judgment of the Circuit Court of Yalobusha County and remand the case for a new trial.
¶ 24. REVERSED AND REMANDED.
CARLSON AND GRAVES, P.JJ., KITCHENS AND CHANDLER, JJ., CONCUR. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., LAMAR AND PIERCE, JJ.

. Sea’s counsel did object later when the State requested to play the videotapes for the jury. By then, however, they already had been admitted into evidence, without objection.

. The children were ages four, five, seven, and nine, respectively. We use initials for the children's names to protect their identities.

.
Q: And did the girls, when you talked to them there in the hospital, indicate to you that they had been molested?
DEFENSE: Your Honor, I am going to object to that’s [sic ] hearsay.
THE COURT: What was your question again?
STATE: I said did they indicate to you that they had been molested?
THE COURT: To that extent, I'll permit it to come in.

. If counsel's statement — “been discussed in chambers to some extent” — means a hearing on the admissibility of the videotapes took place, the record includes no transcript of it, so it is of no value on appeal.

. Smith v. State, 797 So.2d 854, 856 (Miss.2001) ("It is axiomatic that a litigant is required to make a timely objection.... [I]f no contemporaneous objection is made, the error, if any, is waived.”).

. Bush v. State, 895 So.2d 836, 844 (Miss.2005).

. Id. (footnote and internal citations and quotations omitted).

. Johnson v. State, 29 So.3d 738, 745 (Miss.2009) (referring to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); citing Payton v. State, 708 So.2d 559, 560 (Miss.1998)).

. Id. (citing Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985)).

. Id. (citing Leatherwood, 473 So.2d at 968-69).

. Dissenting opinion at n. 18.

. Gallion v. State, 469 So.2d 1247, 1249-50 (Miss.1985); see also Jones v. State, 702 So.2d 419, 422 (Miss.1997) ("the admission of the fourteen-year-old heroin distribution convictions was manifestly prejudicial”).

. Miss. R. Evid. 803(25).

. Neal v. State, 15 So.3d 388, 406 (Miss.2009) (quoting Smiley v. State, 815 So.2d 1140, 1148 (Miss.2002)). See also Long v. State, 934 So.2d 313, 318 (Miss.Ct.App.2006) ("[T]his was a proper trial strategy, either all or nothing — guilty or acquittal.”).