GRIFFIS, P.J., FOR THE COURT:
 

 ¶ 1. Lakeisha and Keith Bowdry appeal the circuit court's dismissal of their negligence claims based on discovery violations. This case considers whether the dismissal was appropriate under Mississippi Rule of Civil Procedure 37 and
 
 Pierce v. Heritage Properties, Inc.
 
 ,
 
 688 So.2d 1385
 
 (Miss. 1997). We find reversible error and remand for further proceedings.
 

 FACTS
 

 ¶ 2. On April 15, 2011, Keith was on duty as a Tupelo police officer. He was pulling out of a Texaco gas station when his vehicle collided with another vehicle traveling on South Gloster Street in Tupelo, Mississippi. As a result of the accident, Keith was taken to North Mississippi Medical Center where he was treated for complaints of pain in his head, neck, left knee, and lower back.
 

 ¶ 3. Keith and his wife Lakeisha filed a complaint against T. Mart Inc. and Tommy Brooks Oil Company (collectively "T. Mart"), the owners of the Texaco gas station. The complaint alleged that the shrubbery on T. Mart's property negligently inhibited the sight line of an exiting vehicle. Keith sought to recover damages from the accident, and Lakeisha sought damages for loss of consortium.
 

 ¶ 4. Keith was served with interrogatories related to his prior medical history and treatment. He was asked whether he ever had been involved in any other accident or incident or if he had any illness or sickness of any kind of any type or severity that required or resulted in him being seen or treated by any medical professional. In response, Keith disclosed a motor-vehicle accident that occurred on August 25, 2005, in a Tupelo Walmart parking lot. Keith's response did not provide information as to any injuries that resulted from the accident. But, the response stated that Keith saw two separate medical providers and a physical therapist following the incident.
 

 ¶ 5. Keith later was deposed by T. Mart. Keith was asked whether he ever had experienced prior neck problems, and he responded that he had not. Keith also was asked about lower-back issues, and he responded-"[n]ot lower back." After the deposition, T. Mart obtained Keith's prior medical records. The records revealed that he had received medical treatment for his neck and lower back after the 2005 accident.
 

 ¶ 6. T. Mart believed Keith's discovery responses were false. T. Mart then filed a motion to dismiss the complaint pursuant to Rule 37(b)(2) and 37(e). After a hearing, the trial court granted the motion to dismiss with prejudice. The trial court concluded that, under the circumstances, no sanction less than dismissal would be appropriate to satisfy the deterrent value of Rule 37. Also, because Lakeisha's claim was derivative in nature, it too was dismissed with prejudice.
 

 STANDARD OF REVIEW
 

 ¶ 7. "A trial court's dismissal of a cause of action as a sanction for discovery abuse is reviewed for abuse of discretion."
 
 Avare v. Gulfside Casino P'ship
 
 ,
 
 178 So.3d 796
 
 , 798 (¶ 4) (Miss. Ct. App. 2013). "When [an appellate court] reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard."
 
 Pierce,
 

 688 So.2d at 1388
 
 . "If the trial court applied the right standard, then [the c]ourt considers whether the decision was one of several reasonable ones [that] could have been made."
 

 Id.
 

 Thus, "[a]n appellate court will affirm a trial court's dismissal of a cause of action as a sanction 'unless there is a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.' "
 
 Avare
 
 ,
 
 178 So.3d at 798
 
 (¶ 4) (quoting
 
 Pierce
 
 ,
 
 688 So.2d at
 
 1388 ). "We will, however, review issues of law de novo."
 

 Id.
 

 ¶ 8. "We recognize that the exercise of dismissal power should be limited to 'the most extreme circumstances.' "
 

 Id.
 

 (quoting
 
 Gilbert v. Wal-Mart Stores Inc.
 
 ,
 
 749 So.2d 361
 
 , 364 (¶ 6) (Miss. Ct. App. 1999) ). We further recognize that "[an appellate c]ourt's duty is to decide not whether it would have dismissed the action as an original matter, but whether the [trial] court abused its discretion in so doing."
 
 Pierce
 
 ,
 
 688 So.2d at 1388-89
 
 .
 

 ANALYSIS
 

 ¶ 9. The question here is whether the circuit court committed reversible error in the decision to dismiss the Bowdrys' complaint under Rule 37 and
 
 Pierce.
 

 ¶ 10. In
 
 Pierce
 
 , the plaintiff was injured when a ceiling fan in her apartment fell onto her.
 

 Id.
 

 at 1387
 
 . During discovery and at trial, she concealed the fact that another person had been present in the room when the ceiling fan fell.
 

 Id.
 

 at 1387-88
 
 . On numerous occasions, through extensive discovery, and in response to interrogation at the first trial, she maintained that she had been alone when the accident occurred.
 

 Id.
 

 at 1387
 
 . After a new trial was granted for other reasons, it was discovered that she had lied.
 

 Id.
 

 at 1388
 
 . The circuit court found that such a blatant lie was a reason to dismiss her case, even though there was no prejudice to the defendants.
 

 Id.
 

 ¶ 11. The supreme court's analysis in
 
 Pierce
 
 provides us with the framework we must consider in this appeal:
 

 Pierce contends that the circuit court erred and abused its discretion by imposing the sanction of dismissal with prejudice, thereby barring her from any recovery for injuries caused when the ceiling fan fell on her. Specifically, the appellant argues that the trial court misapplied
 Mississippi Rule of Civil Procedure 37(b)(2) by imposing the "death penalty" and dismissing her lawsuit.
 

 The decision to impose sanctions for discovery abuse is vested in the trial court's discretion. The provisions for imposing sanctions are designed to give the court great latitude. The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.
 

 Pierce
 
 ,
 
 688 So.2d at 1388
 
 (internal citations and quotation marks omitted). It is very important to note the supreme court's express word of caution and admonition: "Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery
 
 only under the most extreme circumstances
 
 ."
 

 Id.
 

 (emphasis added).
 

 ¶ 12. In his response to interrogatories, Keith provided the following information:
 

 INTERROGATORY NUMBER 9: Before or after the date of the occurrence [that] is the subject of this action, had you ever been involved in any other accident or incident or had any illness or sickness of any kind and of any type or severity [that] required you to be seen or resulted in your being seen or treated by any doctor, hospital[,] or other medical provider? If so, please state in detail the following:
 

 (a) The date and place of the accident, incident, illness[,] or sickness;
 

 (b) A description of the accident, incident, illness[,] or sickness;
 

 (c) Names, addresses[,] and phone numbers of witnesses to the accident, incident, illness[,] or sickness;
 

 (d) The name of the defendant (or person or entity against whom you made your claim), if lawsuit, action[,] or claim was made on your behalf;
 

 (e) The court or other tribunal where any action or claim was filed, together with any identifying action number;
 

 (f) The names, addresses[,] and phone numbers of all medical doctors, any other medical personnel, hospitals, or other medical facilities or medical providers wherein you received treatment as a result of the accident, incident, illness[,] or sickness[ ] identified above.
 

 RESPONSE: Plaintiff, Keith Bowdry was involved in an automobile accident in 2005 on the Wal-Mart parking lot in Tupelo, Mississippi, when [his] vehicle was struck by a vehicle being driven the wrong way by an employee of Lencare Medical Supply. [Keith] does not recall the name of the driver. [Keith] was seen by a doctor at Semmes Murphy Neurologic and Spine Institute[,] ... Debra Hill, NP, and Reenea Willis, PT, of Rehab Solutions, PLLC. No lawsuit was filed[;] however, [Keith] was compensated for damages by the insurance company for Lencare Medical Supply.
 

 INTERROGATORY NUMBER 10: Please identify the names, addresses[,] and phone numbers of your regular family doctor and the names, addresses[,] and phone numbers of any other medical doctors or any other medical personnel not previously listed, who have treated you or given you any medical advice for the past ten years.
 

 RESPONSE: Dr. Norris Crump-898 Lynden Blvd., Tupelo, MS 38801[;] and Debra Hill, NP-Plantersville Clinic, 2489 Main St., Plantersville, MS 38862[.]
 

 ¶ 13. In his deposition, Keith responded to the following questions about his prior neck or lower-back issues:
 

 Q: Before this accident, had you ever had any prior problems with your neck?
 

 A: No, sir.
 

 Q: [Had] you ever had to have any medical treatment for your neck before the accident?
 

 A: When I was a kid, I had a cyst on the back of my neck .... I was like, maybe, 12 or 13, something like that. That's the only problem I had.
 

 Q: Did you ever have any prior problems with headaches before the accident?
 

 A: No, sir.
 

 Q: What about your lower back?
 

 A: Not lower back.
 

 ¶ 14. T. Mart obtained Keith's medical records. The records included the following information about Keith's medical care for injuries he received in the accident:
 

 1. On April 4, 2005, Keith was treated at Plantersville Clinic for low back pain that had started a few days prior. The Plantersville Clinic record shows that Keith had "low back pain, started Saturday."
 

 2. In August 2005, Keith was involved in an automobile accident and was treated at North Mississippi Medical Center. His chief complaint was characterized as "MVA THIS A.M. C/O LOW BACK PAIN[;] UNRESTRAINED DRIVER."
 

 3. On August 31, 2005, Keith was at Plantersville Clinic due to continued pain from the accident. The record shows that Keith "had MVA last Thursday, hurts from neck all the way down back" and "leg weakness and burning sense [after] MVA-hurting at night in back and legs."
 

 4. The injury was severe enough to necessitate MRIs of the lumbar spine, thoracic spine[,] and cervical spine. On each of the MRI reports, the indication was "neck and back pain." The MRI of the cervical spine showed "mild reversal of the normal lordotic curvature of the cervical spine" and "mild disc osteophyte complex mainly at the C3-C4 and C4-C5 levels but borderline to mild spinal stenosis as described."
 

 5. Also, Keith was at North Mississippi Medical Center on September 10, 2005, due to "neck and back problems, wreck 8/25/05."
 

 6. Further, in October 2005, Keith was at Plantersville Clinic due to "L shoulder pain-hurts to raise arm, low back pain, neck pain, needs excuse for light duty[,]" and, "burns down into buttock. Lumbar back." He was diagnosed with shoulder strain and lumbar strain.
 

 7. Five days later, Keith was a patient at Semmes Murphey Neurologic & Spine Institute. He complained of "left shoulder, neck[,] and back pain, without radicular symptomatology" and "severe pain in his back." A physical examination was performed[,] which showed "cervical range of motion is limited on forward flexion, hyperextension[,] and lateral bending[.] He also has some myofascial trigger points in the lumbar area with a restricted range of motion in the lumbar spine on forward flexion and hypertension." He was diagnosed with "cervical and lumbar spasms," and physical therapy was prescribed due to "cerv/LB pain."
 

 8. He returned to Semmes Murphey Clinic in November 2005 due to "lumbar myofascial pain" as well as shoulder pain. Keith was again noted to have "cervical myofascial spasms" and "lumbar myofascial spasms." He was prescribed "aggressive
 physical therapy for myofascial release of the cervical and lumbar areas[.]"
 

 ¶ 15. From this evidence, the trial judge granted the motion to dismiss and ruled:
 

 A comparison of Keith Bowdry's answers to interrogatories and deposition testimony with his pre-accident medical records show that he intentionally and deceitfully misrepresented his pre-existing medical condition with respect to his neck and back. Mississippi's appellate courts have consistently found this type of concealment of facts to be willful and in bad faith.
 

 ¶ 16. This Court must review the trial court's decision under an abuse of discretion standard.
 
 Pierce
 
 ,
 
 688 So.2d at 1388
 
 . This requires that we may only reverse when there is a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors."
 

 Id.
 

 ¶ 17. In
 
 Kinzie v. Belk Department Stores L.P.
 
 ,
 
 164 So.3d 974
 
 , 977-80 (¶¶ 6-13) (Miss. 2015) (internal citations and quotations omitted), the supreme court ruled:
 

 In
 
 Pierce,
 
 this Court held that dismissal was appropriate because the plaintiff had flat-out lied under oath about the existence of an eyewitness to the incident that had caused the plaintiff's alleged injuries and had consistently obstructed the progress of the litigation by filing admittedly false responses to various discovery requests and by swearing to false testimony in depositions. This Court determined that dismissal was appropriate because the plaintiff had acted in bad faith, and that any sanction other than dismissal would virtually allow the plaintiff to get away with lying under oath .... The Court noted, however, that it would remain very reluctant to affirm such a harsh sanction, and did so in that case only because it provided the
 
 paradigm
 
 situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a great deal of perjured testimony.
 

 In other cases in which this Court has affirmed dismissal, the discovery violations were similarly egregious. In
 
 Scoggins v. Ellzey Beverages, Inc.
 
 ,
 
 743 So.2d 990
 
 (Miss. 1999), the plaintiff, who could perfectly recall the details of several aspects of her life for many years, completely failed to disclose several invasive medical procedures and doctors' visits that were relevant to her claim.
 

 The trial court in that case found that the plaintiff made an apparently deliberate attempt to subvert the judicial process, and she presented no credible explanation for the total lack of congruence between her testimony and her medical records. This Court affirmed, again noting that this case presented a rare instance where the conduct of a party is so egregious that no other sanction will meet the demands of justice.
 

 More recently, in
 
 Ashmore v. Mississippi Authority on Educational Television
 
 ,
 
 148 So.3d 977
 
 , 985 (Miss. 2014), we affirmed a dismissal where the plaintiff had lied by concealing a right-knee surgery and degenerative joint disease in his right knee. The plaintiff also had hidden the existence of a subsequent left-knee injury or degenerative disc disease in his back, despite medical reports to the contrary. Once again, the discovery violations that justified dismissal were clear and unequivocal falsehoods.
 

 However, where the discovery violation at issue is less extreme and open to potential truthful interpretations, this Court will not hesitate to reverse a trial court's Rule 37 dismissal. In
 
 Wood ex rel. Wood v. Biloxi Public School District
 
 ,
 
 757 So.2d 190
 
 , 193 (Miss. 2000), the plaintiff responded to an interrogatory regarding the nature of his injuries by stating, "I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful." After viewing undercover surveillance video of the plaintiff walking normally, squatting, twisting, bending, and generally performing normal daily functions without any indication of impairment or pain, the trial court dismissed the plaintiff's case. This Court reversed, finding that the only discovery response which was contradicted by evidence at the hearing on the motion to dismiss was one ambiguously worded response to one interrogatory question." As the plaintiff's response indicated that he could still perform certain tasks, just with less enjoyment than before, the Court held that the defendants did not establish that the plaintiff knowingly made false statements in discovery and it was certainly not established that the plaintiff had engaged in a pattern of such false responses. The Court held that the alleged untruthfulness in Wood's interrogatories, if any, d[id] not constitute a sufficiently egregious discovery violation such that no other sanction will meet the demands of justice.
 

 We find the discovery violation in this case to be more similar to the alleged discovery violation in
 
 Wood
 
 than the unequivocally false and misleading discovery violations found in
 
 Pierce
 
 ,
 
 Scoggins
 
 , and
 
 Ashmore
 
 . In
 
 Wood
 
 , the plaintiff stated that he could no longer enjoy certain activities as he could before being injured. Here, Kinzie stated that he could not perform several activities as he could before his injury. He was truthful when it came to his medical record and his medically diagnosed work restrictions. Kinzie indisputably was injured. He went to an emergency room immediately after his accident and, at that time, was diagnosed with central-disc protrusion, disc desiccation, and disc bulging. He underwent an invasive surgical procedure on his spine. The activity observed in the undercover video did not stray outside of his medical work restrictions, and it did not encompass any of the specific activities that he stated he no longer could perform. The trial court found this to be a discovery violation. While the trial court cannot be said to have been manifestly wrong in its determination that there was, in fact, a discovery violation, the severe sanction of dismissal amounts to clear, reversible error amounting to an abuse of discretion.
 

 Kinzie did not blatantly lie about the existence of a witness, as did the plaintiff in
 
 Pierce
 
 , nor did he completely misrepresent years of medical history and procedures, as did the plaintiff in
 
 Scoggins
 
 , nor did he hide any other surgeries, as did the plaintiff in
 
 Ashmore
 
 . The Court finds no "total lack of congruence" between Kinzie's responses and his medical records, as the trial court found in
 
 Scoggins
 
 . Nor do we find this to be the paradigm situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a great deal of perjured testimony as this Court found in
 
 Pierce
 
 . Instead, and similar to the plaintiff in
 
 Wood
 
 , Kinzie answered an interrogatory about the extent of his injuries in a way that the trial court thought was misleading. And here, although the trial court found Kinzie's response to be false, the perceived falsehood arose in an isolated incident, and it certainly has not been established that Kinzie's statements in discovery indicate any kind of pattern of misleading or false responses.
 

 Analogously, this Court has reversed a trial court's dismissal based on Rule of Civil Procedure 41(b) where the trial court failed to consider lesser sanctions, including fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings. Just as this Court found then, in this case, it is not at all certain that lesser sanctions would have been futile in expediting the proceedings. Although we do not find, as did the Court of Appeals, that the trial court abused its discretion when it determined that Kinzie had committed a discovery violation, we hold that the trial court erred when it dismissed the case completely as a result of that violation while paying mere lip service to the possibility and practicality of lesser sanctions.
 

 Dismissal is appropriate only under the most extreme circumstances and only where lesser sanctions will not suffice. This is not an extreme case, and lesser sanctions can deter misleading responses without dismissing Kinzie's claims altogether. A jury will watch this video, and that may influence its ultimate determination. But a jury ought to make that ultimate determination, not the trial judge. The discovery violation at issue is not sufficiently extreme to justify a full and final dismissal of the case. We therefore affirm that portion of the judgment of the Court of Appeals which held that dismissal with prejudice was not warranted. We reverse the Court of Appeals' finding that the trial court abused its discretion when it determined that Kinzie had committed a discovery violation. We reverse the judgment of the Circuit Court of the First Judicial District of Hinds County dismissing the case with prejudice, and we remand the case for trial.
 

 ¶ 18. The supreme court's analysis in
 
 Kinzie
 
 applies here. Dismissal was simply not a reasonable sanction. T. Mart argues that Keith made intentional and deceitful misrepresentations. However, we find no evidence to support the conclusion that Keith intentionally misled or blatantly lied when he testified that he had not suffered prior neck and lower-back problems. Unlike in
 
 Pierce
 
 , Keith's interrogatory responses and the reasonably expected discovery efforts of the defendants led to the medical records that may contradict Keith's deposition testimony. Certainly, these medical records may be offered to attack Keith's credibility at trial and to accurately present evidence of his prior medical history and condition. However, under these circumstances, a lesser sanction of attorney's fees and costs associated with obtaining the medical records would be an appropriate sanction. Dismissal is certainly not.
 

 ¶ 19. The judicial administration of civil claims is governed by the Mississippi Rules of Civil Procedure. These Rules provide the mechanism for bringing civil claims, to obtain discovery, and to attain a resolution. Mississippi Rule of Civil Procedure 1 provides that "[t]hese rules govern procedure in the circuit courts ... in all suits of a civil nature .... These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." Here, we must construe how the trial court applied Rule 37. Appellate courts often recognize that a litigant " 'is entitled to a fair trial but not a perfect one,' for there are no perfect trials."
 
 [1]
 

 Likewise, there are no perfect trials in civil cases.
 

 ¶ 20. Yet, the dissent seeks perfection in discovery. At trial, T. Mart will have the ability to cross-examine and impeach Keith about his deposition testimony versus his medical records. The jury will then be able to assess his credibility and reach a fair verdict based on the evidence.
 

 ¶ 21. The facts of this case simply do not rise to the level of deception or concealment in
 
 Pierce
 
 or
 
 Eaton v. Frisby
 
 , as argued by the dissent. Instead, this is similar, if not identical, to this Court's recent decision in
 
 Westfall v. Goggins
 
 , 2016-CA-00727-COA, --- So.3d ----, ---- - ----,
 
 2017 WL 4511138
 
 , at *7-8 (¶¶ 21-22) (Miss. Ct. App. Oct. 10, 2017). In
 
 Westfall
 
 , we noted that anytime a defendant asks for dismissal of the action for a discovery violation, the trial judge and this Court must begin with the important admonition in
 
 Pierce
 
 -dismissal is appropriate "only under the most extreme circumstances" and only where lesser sanctions will not suffice.
 

 Id.
 

 at ----,
 
 2017 WL 4511138
 
 , at *7 (¶ 21) (quoting
 
 Pierce
 
 ,
 
 688 So.2d at
 
 1388-89 ). Just like
 
 Westfall
 
 , this is simply not an extreme case that requires dismissal.
 

 ¶ 22. Therefore, we find a definite and firm conviction that the circuit judge committed a clear error of judgment in the dismissal of this action. We reverse the circuit court's judgment and remand this case for further proceedings consistent with this opinion.
 

 ¶ 23.
 
 REVERSED AND REMANDED.
 

 LEE, C.J., IRVING, P.J., FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. BARNES, J., NOT PARTICIPATING.
 

 Conners v. State
 
 ,
 
 92 So.3d 676
 
 , 688 (¶ 33) (Miss. 2012) (quoting
 
 Brown v. United States
 
 ,
 
 411 U.S. 223
 
 , 231-32,
 
 93 S.Ct. 1565
 
 ,
 
 36 L.Ed.2d 208
 
 (1973) );
 
 see also
 

 Bruton v. United States
 
 ,
 
 391 U.S. 123
 
 , 135,
 
 88 S.Ct. 1620
 
 ,
 
 20 L.Ed.2d 476
 
 (1968).