# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-01218-SCT

*RAYMOND PHILLIPS a/k/a RAYMOND FRANK PHILLIPS a/k/a RAYMOND FRANK PHILLIPS, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2023 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| TRIAL COURT ATTORNEYS: | ERIC WILLIAM RAY |
| | CANDANCE L. RICKMAN |
| | KIMBERLY WOODALL MORRISON |
| | BRYAN P. BUCKLEY |
| | EARL LINDSAY CARTER, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KATY SARVER |
| DISTRICT ATTORNEY: | LIN CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/13/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Raymond Phillips appeals his attempted aggravated assault conviction. On appeal, Phillips raises three issues through counsel and one issue pro se in a supplemental brief. Through counsel, Phillips raises the following issues: (1) the admission of an officer's body-camera footage and a search warrant affidavit violated Phillips's Sixth Amendment right to

confrontation; (2) the underlying facts and circumstances for a search warrant impermissibly commented on Phillips's post-*Miranda*[1] silence; and (3) cumulative error deprived Phillips of a fundamentally fair trial. Pro se, Phillips claims that his trial counsel was ineffective. Because Phillips's right to confrontation was not violated, the search warrant commenting on his post-*Miranda* silence was harmless error, cumulative error did not deprive Phillips of a fundamentally fair trial, and Phillips's trial counsel was not ineffective, we uphold Phillips's conviction.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the night of February 24, 2023, in Hattiesburg, Mississippi, Ronald Brown called 911 to report that a man he identified as Raymond Phillips had just shot at him. The Hattiesburg Police Department 911 Center received three calls that night associated with the incident. The first call from Brown dropped after he told the operator he had been shot at by Phillips. During the second call, Brown and the operator had an extended conversation, but the operator was not able to ascertain Brown's location. Melinda Standley, the 911 dispatcher who testified at trial, described Brown's demeanor as frantic during the calls. The dispatcher eventually called the number back and asked for Brown's exact location, which was the corner of Dabbs Street and Rosa Street.

¶3.     Officer Mason Ianconangelo arrived on the scene first and spoke with Brown, who Ianconangelo described as "distraught" and "exasperated." Officer Ianconangelo testifed that during the course of his investigation, he discovered that "Mr. Brown was fired upon, one

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

single shot, by Mr. Phillips," and he recovered one shell casing on the ground near the intersection of Dabbs Street and Willis Avenue. He took Brown to the Hattiesburg Police Department to be interviewed by detectives.

¶4.     Officer Joshua Truss was also dispatched to the scene that night, and the dispatchers gave him Phillips's name as a possible suspect. Truss testified that he knew Phillips prior to the incident that night, and he became aware that Phillips had fled the scene in a tan Ford Ranger. Officer Truss began canvassing the area in an attempt to locate the vehicle, but he was unable to find it. Next, Truss testified that he returned to the scene and began to speak with Brown, the victim. According to Truss, Brown was "hysterical" and "frantic," so Truss was unable to understand what Brown said happened. As Truss was speaking with Brown, Phillips approached the scene driving his truck, and Brown immediately identified Phillips as the man who shot at him. According to Truss, he gave Phillips "loud, verbal commands" to stop, but Phillips did not stop. Truss then followed Phillips to his home. Phillips stepped out of the vehicle, and Truss patted him down and asked what had occurred that night on Dabbs Street. At first, Phillips claimed that nothing had happened, but he later told Truss that a dispute had occurred the night before concerning a lawn mower. Truss handcuffed Phillips and put him in his patrol car. A glance into Phillips's truck revealed a small firearm on the driver's side floorboard, but Truss did not search the vehicle on the scene because Phillips denied consent.

¶5.     Additionally, Truss testified that he was wearing a body camera on the night of the shooting. The State moved to introduce the body-camera footage into evidence, the defense

3

did not object, and the footage was published to the jury. In recapping the body-camera footage, Truss described the firearm he found in Phillips's truck as orange with a silver top. Truss then confirmed that the man on the body-camera footage from that night was Phillips, who was present in the courtroom.

¶6.     Detective Chandra Daniels testified at trial that once she was notified of the incident, she drove to the Hattiesburg Police Department to find both Brown and Phillips there. Another detective on scene that night informed Daniels of the details of the incident, and Daniels took photographs of both Brown and Phillips once they arrived at the police department.

¶7.     Daniels further testified that as a part of her investigation, she reviewed interview footage from Brown as well as camera footage from a NOLA camera that was located on Dabbs Street. A NOLA camera is a crime detection camera installed by the Hattiesburg Police Department in high crime areas. NOLA cameras identify gunshots, and some have facial recognition software. Daniels testified that as she reviewed the NOLA camera footage, she was able to identify that the two men involved in the shooting on Dabbs Street were Phillips and Brown, according to the photographs she had taken of them at the police station the night of the incident. The State moved to introduce the NOLA camera footage into evidence, and it was published to the jury.

¶8.     As the jury watched the footage, Daniels outlined the night in question. In the opening scene, Brown and Phillips appeared on the scene, and Phillips pulled an object from his waistband with his right hand. Then, Phillips raised his right hand and pointed the object

4

directly in front of him. The video next made a "metallic sound," which Daniels testified is how a gunshot sounds on a NOLA recording. Daniels further testified that in this scene, she believed that Phillips was pointing a gun at Brown before he fired. At the time Phillips fired, however, Brown had walked out of the video frame onto Willis Avenue, which is in the direction Phillips was pointing the gun.

¶9.    Next, Daniels testified about the search of Phillips's truck. Phillips denied consent for officers to search his vehicle at the scene, so it was towed. Daniels obtained a search warrant for the truck. The State then moved to introduce Daniels's search warrant into evidence, and the defense did not object. Daniels proceeded to testify that after obtaining the warrant, she searched Phillips's truck and found a Taurus 9 mm firearm on the driver's side floorboard. Daniels confirmed that the shell casing found by Officer Ianconangelo during his search of the scene matched the gun caliber and brand of the firearm found in Phillips's truck.

¶10.    Additionally, Daniels described multiple photographs that she had taken from Google Maps of the location of the shooting. First, Daniels identified Phillips's truck's path of travel, which began on Dabbs Street. She then identified a marking she had made on the photo as the location of the shooting. She also had drawn an arrow down Willis Avenue, which she described as the direction of the bullet and the direction that Brown walked as he went out of view of the camera. Daniels further testified that down Willis Avenue was the same direction Phillips fired the handgun. Once Brown walked down Willis Avenue, however, he no longer was visible on the NOLA camera.

5

¶11. Jeff Byrd, a crime scene investigator with the Hattiesburg Police Department, testified next. Byrd explained that he logged the firearm and the shell casing out of evidence and transported them to the Mississippi Gulf Coast Crime Lab for testing. Toniann Rebick, a forensic firearm examiner at the Mississippi Gulf Coast Crime Lab, then testified, explaining that she performed tests on the firearm and shell casing that Byrd delivered to the lab. After testing, Rebick discovered that the shell casing from the scene was fired from the gun found in Phillips's truck.

¶12. After the State rested, the defense requested the court grant a directed verdict as to the aggravated assault count of the indictment. The defense argued that because Brown did not testify, testimony from the witnesses concerning what caused an investigation to occur was "based on hearsay statements from a complaining witness who is not present." The State responded by arguing that they presented video evidence to the jury of Phillips shooting "at who we know to be Ronald Wayne Brown," and that alone is enough evidence for a conviction. Further, the State argues that it presented Truss's body-camera footage, which captures Brown saying that Phillips shot at him. The State concluded by asserting that they had met their burden of establishing that Phillips attempted to cause serious bodily injury to Brown. The defense responded, arguing that "there's a fundamental right that [Phillips] has to confront this witness." The trial court ruled that the State had met its burden by the video and Truss's body-camera footage, and it denied the defense's directed verdict.

¶13. After deliberation, the jury found Phillips guilty of Count I, attempted aggravated assault, and Count II, possession of a weapon by a convicted felon as a habitual offender

pursuant to Mississippi Code Section 99-19-81 (Rev. 2020). At sentencing, the court sentenced Phillips to serve twenty years in the custody of the Mississippi Department of Corrections for Count I and ten years for Count II, to be served concurrently with the Count I sentence.

¶14. After his conviction, Phillips filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. In his motion, Phillips contended that the trial court erred by not dismissing Count I on his motion to dismiss because the State "failed to make a prima facia case against him for felony aggravated assault." Further, Phillips argued that the trial court erred by not dismissing Count I upon his motion for directed verdict because the jury's verdict "did not conform to the facts and evidence submitted at trial."

¶15. The trial court denied Phillips's motion, and Phillips now appeals. On appeal, Phillips argues through counsel (1) his confrontation right was violated; (2) the admission of a search warrant affidavit impermissibly commented on Phillips's post-*Miranda* silence; and (3) cumulative error deprived Phillips of a fundamentally fair trial. Pro se in a supplemental brief, Phillips argues that his trial counsel was ineffective.

## DISCUSSION

I. *Whether the trial court's admission of certain evidence violated Phillips's right to confrontation.*

¶16. This Court reviews Confrontation Clause issues under a de novo standard. *Hayden v. State*, 972 So. 2d 525, 535-36 (Miss. 2007) (citing *Baker v. State*, 802 So. 2d 77, 80 (Miss. 2001)).

7

¶17.    Phillips argues that the trial court violated his Sixth Amendment right to confront the witnesses against him when it allowed the State to introduce Truss's body-camera footage and the underlying facts and circumstances of the search warrant into evidence. The body camera footage and the search warrant both contained statements from Brown, who did not testify at trial. Phillips claims that the error in admission was not harmless.

¶18.    Contrastingly, the State argues that because Phillips did not object to the admission of the body-camera footage and the search warrant application contemporaneously, the trial court did not err. The State asserts that Phillips's objection to the admission of this evidence, which occurred for the first time only after the State rested its case, lacked specificity.

¶19.    "Counsel must object contemporaneously to inadmissible evidence in order to preserve the error for appeal." *Ronk v. State*, 172 So. 3d 1112, 1134 (Miss. 2015) (internal quotation marks omitted) (quoting *Boyd v. State*, 977 So. 2d 329, 227 (Miss. 2008)). If counsel fails to make a contemporaneous objection, the error is waived. *Id.* (citing *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987)). "We have consistently applied the procedural bar to Confrontation Clause claims when the issue was not raised at trial." *Ronk*, 172 So. 3d at 1134 (citing *Galloway v. State*, 122 So. 3d 614, 661 (Miss. 2013); *Rogers v. State*, 928 So. 2d 831, 838 (Miss. 2006)).

¶20.    In *Ronk*, the State introduced bank records of Ronk's victim into evidence through the testimony of a detective, and Ronk did not object. *Id.* Ronk argued that the trial court's admission of the victim's bank records violated his Sixth Amendment right to confront the witnesses against him because the detective had no personal knowledge of how the records

8

were prepared. ***Id.*** On appeal, this Court held that since Ronk did not make a contemporaneous objection to the bank records, his argument was procedurally barred. ***Id.*** at 1134.

¶21. Similarly here, Phillips did not make a contemporaneous objection. Because Phillips did not make a contemporaneous objection to either the admission of the body-camera footage or the search warrant at trial, his argument on this issue is procedurally barred.

¶22. Phillips asserts, however, that we should review for plain error. "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or 'seriously affects[s] the fairness, integrity, or public reputation of judicial proceedings." ***Conners v. State***, 92 So. 3d 676, 682 (Miss. 2012) (alteration in original) (quoting ***Brown v. State***, 995 So. 2d 698 (Miss. 2008)).

¶23. "Both the Sixth Amendment to the Constitution of the United States and Article 3, Section 26, of the Constitution of the State of Mississippi provide a criminal defendant the right 'to be confronted by the witnesses against him.'" ***Johnson v. State***, 155 So. 3d 733, 739 (Miss. 2014). "In ***Crawford v. Washington***, the United States Supreme Court held that testimonial statements of witnesses absent from trial can be admitted, in accordance with common law, *only* where the declarant is unavailable *and* the defendant had a prior opportunity to cross-examine." ***Smith v. State***, 986 So. 2d 290, 296 (Miss. 2008) (citing ***Crawford v. Washington***, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).

¶24. "The Supreme Court distinguished between testimonial and non-testimonial statements, and this Court has adopted the distinction[.]" ***Johnson***, 155 So. 3d at 739.

Statements are non-testimonial when they are "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." ***Davis v. Washington***, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). Testimonial statements occur when the "circumstances objectively indicate that there is no such ongoing emergency" and when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." ***Id.***

### A. Brown's Statements in the Body-Camera Footage

¶25.    Phillips first argues that the trial court's admission of the body-camera footage violated his right to confrontation. In the footage, Brown is heard telling the officer that the "bullet went right past my f****** ear." Phillips asserts that after an objective evaluation of the circumstances under which Brown's statements captured on the body-camera footage occurred, there was not an ongoing emergency. Contrastingly, the State argues that Brown's statement that Phillips shot at him and that the bullet just missed him was "crucial to addressing an ongoing emergency." The State suggests that the situation was an ongoing emergency because Phillips was armed, had shot toward at least one person, and had fled the scene.

¶26.    In ***Davis***, the United States Supreme Court held that "statements made by a domestic violence victim to a 911 operator were not testimonial, noting that the statements 'were necessary to be able to resolve the present emergency, rather than to simply learn'" past events. ***Sanders v. State***, 77 So. 3d 484, 488 (Miss. 2012) (footnote omitted) (quoting ***Davis***,

10

547 U.S. at 827). The United States Supreme Court later expanded on what constitutes an ongoing emergency in *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 179 L. Ed. 2d 89 (2011). The Court held that a victim's "statements to law enforcement officials soon after being found shot in a gas-station parking lot were not testimonial because 'the circumstances of the encounter as well as the statements and actions of [the victim] and the police objectively indicate[d] that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency.'" *Sanders*, 77 So. 3d at 488 (footnote omitted) (alteration in original) (quoting *Bryant*, 562 U.S. at 348). "The *Bryant* Court held that whether the 'primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency' is the 'ultimate inquiry' when deciding whether a statement is testimonial." *Sanders*, 77 So. 3d at 488 (quoting *Bryant*, 562 U.S. at 348). To determine the primary purpose of an interrogation, courts must "objectively evaluate the circumstances in which the encounter occurs[.]" *Bryant*, 562 U.S. at 359.

¶27. The relevant inquiry in determining whether the primary purpose of an interrogation is to meet an ongoing emergency, making statements non-testimonial, is the "purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.* at 361. Courts should further look at whether an ongoing emergency existed at the time of their encounter, the "formality of the encounter between the victim and the police, and the statements and actions of both the declarant and the interrogators." *Sanders*, 77 So. 3d at 489 (citing *Bryant*, 562 U.S. at 366). The *Bryant* Court also

11

noted the importance of the victim/declarant's medical condition in the "primary purpose" determination "to the extent that it sheds light on the ability of the victim to have any purpose at all in responding to police questions and on the likelihood that any purpose formed would necessarily be a testimonial one."

*Sanders*, 77 So. 3d at 489 (quoting *Bryant*, 562 U.S. at 365).

¶28.   In *Bryant*, police officers responded to a 911 call that a man had been shot, but they did not know "why, where, or when" the shooting occurred. *Id.* (quoting *Bryant*, 562 U.S. at 375-76). Further, the officers did not know the "location of the shooter or anything else about the circumstances in which the crime had occurred." *Id.* (quoting *Bryant*, 562 U.S. at 376).  The officers asked the victims question like "what had happened, who had shot him, and where the shooting occurred[,]" *Bryant*, 562 U.S. at 348 (internal quotation marks omitted) (quoting *People v. Bryant*, 768 N.W.2d 65, 71 (Mich. 2009), *judgment vacated*, 795 N.W.2d 824 (Mich. 2011) (mem.)), to allow the police to "assess the situation, the threat to their own safety, and possible danger to the potential victim" and to the public. *Id.* at 376 (internal quotation marks omitted) (quoting *Davis*, 547 U.S. at 832). "In other words, they solicited the information necessary 'to enable them to meet an ongoing emergency.'" *Sanders*, 77 So. 3d at 489 (quoting *Bryant*, 562 U.S. at 376).

¶29.   Additionally, the *Bryant* Court considered the "informality of the situation and the interrogation." *Bryant*, 562 U.S. at 377. It reflected that the officers arrived to the scene at varying times, and they did not conduct a formal or structured interrogation. *Id.* The *Bryant* Court ultimately found that the victim's statements to the officers on the scene were made

during an ongoing emergency, they were not testimonial, and they did not violate Bryant's Sixth Amendment Confrontation Clause rights. *Id.* at 377-78.

¶30. In the case at hand, Brown's statements on Truss's body-camera footage did not violate Phillips's Confrontation Clause rights. Here, Brown's statements on the footage were made during an ongoing emergency, and the primary purpose of his statements to the officers that night were to "'assess the situation, the threat to [the officers'] safety, and possible danger to the potential victim' and to the public[.]" *Id.* at 376 (internal quotation marks omitted) (quoting *Davis*, 547 U.S. at 832).

¶31. Analogous to *Bryant*, Truss testified that when he responded to the scene, he first asked Brown what had happened. Truss said, "and I then asked [Brown] what had happened, and he was so hysterical and frantic I never got a chance to really understand what he was saying." Ianconangelo testified similarly saying, "I was dispatched to Dabbs Street. Made contact with Mr. Brown, who was distraught at the time."

¶32. Also consistent with *Bryant*, the interrogation by the officers on the scene that night was not structured or formal. The two responding officers arrived at different times, similar to *Bryant*. After arrival, officers asked Brown what happened and discovered that Phillips was armed and had fled the scene, so officers began a search for him. While Brown was not physically injured, as the victim in *Bryant* was, both officers testified to his distraught, frantic state. This, in conjunction with the fact that Phillips had fled the scene with a weapon, is sufficient to find that the primary purpose of his statements made to officers was to assess the situation and to address the ongoing emergency.

13

¶33. Phillips, armed and at large, created a possible threat to the officers's safety and a potential danger to the victim and the public. *See **Bryant***, 562 U.S. at 376. Accordingly, we find that Brown's statements on the body-camera footage are not testimonial and that Phillips's Sixth Amendment right to confrontation was not violated.

### B. Brown's Statements in the Underlying Facts and Circumstances of the Search-Warrant Affidavit

¶34. Phillips further claims that "the admission of the underlying facts and circumstances in Sergeant Daniels's search warrant affidavit also contained volumes of damaging testimonial hearsay that further destroyed Phillips's right of confrontation."

¶35. The underlying facts and circumstances of the search warrant affidavit contained both information that Brown stated at the scene and statements he presumably made during his interview at the police station after the shooting. It stated that Brown said that he had been "shot at" and that the "bullet passed [his] ear." Brown made these statements to Truss on scene, and Truss's body-camera footage recorded it. Because these statements of Brown's are non-testimonial and made during an ongoing emergency, as explained above, this Court finds that Phillips's right to confrontation was not violated by this statement of Brown's included in the search warrant.

¶36. The search warrant affidavit also contained statements that Brown made during his police interview. The search warrant describes how Brown said that Philips told him that "he was going to 'blow [Brown's] brains out'" because Phillips accused Brown of stealing Phillips's lawn equipment. The warrant also explained that Brown admitted that the two got into a "scuffle" because Brown denied knowing anything about the stolen lawn equipment.

14

¶37.    Phillips argues that Brown's statements contained in the search warrant made during his formal police interview are hearsay and should not have been allowed as admissible evidence at trial. Specifically, Phillips asserts that "Brown's statements at his police-station interview were certainty 'pre-trial statements that declarants would reasonably expect to be used prosecutorially' or 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)). But Phillips did not object to the admission of the search warrant contemporaneously at trial.

¶38.    The State argues that Phillips himself told law enforcement about the dispute over the lawn mower. Further, the State argues that even if any of Brown's statements violated Phillips's confrontation rights, the error was harmless.

¶39.    "It is almost unknown to the jurisprudence of this State for a search warrant to be admitted at trial as substantive evidence against a criminal defendant." *Johnson*, 155 So. 3d at 738. The "receipt into evidence of the search warrants" permitted the State "to get into evidence hearsay statements which deprived [Johnson] of the right of confrontation and cross examination." *Id.* (internal quotation mark omitted) (quoting *Sisk v. State*, 290 So. 2d 608, 610-11 (Miss. 1974)). In *Johnson*, we recognized that "[t]he search warrant materials in effect allowed the unseen, unknown, and unsworn confidential informant to testify against Johnson, without any opportunity for cross examination by the accused." *Id.* at 740. Because

15

of this, the ***Johnson*** Court found that the admission at trial of the statements contained in the search warrant offended Johnson's Confrontation Clause rights. ***Id.***

¶40.    Here, as in ***Johnson***, the admission of the search warrant constitutes inadmissable hearsay, and Phillips's right to confront Brown was violated. But Phillips did not object to the admission of the search warrant at trial. Thus, "we do not recognize plain error unless 'the error resulted in a manifest miscarriage of justice.'" ***Burdette v. State***, 110 So. 3d 296, 304 (Miss. 2013) (quoting ***Conners***, 92 So. 3d at 684).

¶41.    In ***Burdette***, the State presented a crime laboratory report through a police officer with "no apparent relation to the Mississippi Crime Laboratory or to this particular report." ***Burdette***, 110 So. 3d at 304. The report was testimonial because the analysts who actually performed the report were available, and Burdette had no prior opportunity for cross-examination; thus, the admission of the report violated Burdette's Confrontation Clause rights. ***Id.*** But the ***Burdette*** Court's analysis did not end there. In ***Burdette***, "there was no manifest miscarriage of justice, since the only testimony improperly introduced related to an issue agreed upon by the parties and uncontroverted by the evidence[.]" ***Id.*** at 304.

¶42.    Similarly here, there was no manifest miscarriage of justice, so we should not recognize plain error. The statements at issue in the search warrant had been made prior and introduced through other means at trial. As explained above, Brown's statement about the bullet nearly missing him was introduced through Officer Truss's body-camera footage. Additionally, Phillips himself told law enforcement about the dispute over the lawn mower on the scene the night of the shooting. In Truss's testimony, the State asked, "[Phillips] said

16

what about a lawn mower?" Truss responded that Phillips had said "[s]omething had happened the night prior in regards to a lawn mower."

¶43. Further, additional, undisputed evidence was presented that Phillips shot in the direction that Brown was last seen walking, as caught on the NOLA camera. Undisputed testimony from the analyst at the Mississippi Crime Laboratory also supported that the bullet found on the scene matched the handgun found in Phillips's truck.

¶44. Because of this, we find no manifest miscarriage of justice to allow review under the plain-error doctrine. Consequently, because the "constitutional errors . . . did not prejudice the outcome of the trial, there was no manifest miscarriage of justice and no reversible error." *Id.* at 305.

> II. *Whether the search warrant affidavit impermissibly commented on Phillips's post-Miranda silence*

¶45. Next, Phillips claims that the admission of Daniels's search warrant affidavit prejudiced Phillips's trial by "impermissibly commenting on Phillips's failure to give a statement to the police." In return, the State argues that because Phillips failed to object to the admission of the evidence at trial, he failed to preserve the issue for appeal. Even so, the State argues, the issue lacks merit.

¶46. "An appellate court's standard of review of a trial court's admission or exclusion of evidence is abuse of discretion." *Carothers v. State*, 152 So. 3d 277, 281-82 (Miss. 2014) (citing *Osborne v. State*, 54 So. 3d 841, 845 (Miss. 2011)). "Reversal is proper only where 'the error adversely affects a substantial right of a party.'" *Id.* at 282 (internal quotation marks omitted) (quoting *Osborne*, 54 So. 3d at 845).

¶47. The underlying facts and circumstances of the search-warrant application here states: "Phillips was read his *Miranda* rights at which he refused to sign. Phillips refused to cooperate with Sgt. Daniels and the interview was concluded. Phillips immediately laid down in the interview room floor and went to sleep." The State moved to introduce the search-warrant application, including the underlying facts and circumstances, and Phillips did not object.

¶48. "Generally, preservation of an issue for appeal requires a contemporaneous objection at trial." *Kirk v. State*, 160 So. 3d 685, 692 (Miss 2015) (quoting *Christmas v. State*, 10 So. 3d 413, 421 (Miss. 2009)). Because Phillips did not make a contemporaneous objection, this issue is procedurally barred. Phillips asks this Court to review this issue under the plain-error doctrine, however. We may review an issue under the plain error doctrine despite lack of a contemporaneous objection at trial if there was obvious error at trial that was not properly raised by the defendant. *Id.* "To determine whether plain-error has occurred, the reviewing court must determine (1) if the trial court deviated from a legal rule; (2) whether that error is plain, clear, or obvious; and (3) whether the error prejudiced the outcome of the trial." *Robinson v. State*, 247 So. 3d 1212, 1226 (Miss. 2018) (citing *McGee v. State*, 953 So. 2d 211, 215 (Miss. 2007)).

¶49. "An accused has the right to remain silent, guaranteed by the Fifth Amendment to the United States Constitution." *Swinney v. State*, 241 So. 3d 599, 608 (Miss. 2018) (internal quotation marks omitted) (quoting *Austin v. State*, 384 So. 2d 600, 601 (Miss. 1980)). "Evidence of post-arrest silence is improper because it violates the accused's right against

self-incrimination." *Austin*, 384 So. 2d at 601 (citing *Miranda*, 384 U.S. 436). "The *Miranda* warnings contain an implicit guarantee that 'silence will carry no penalty,' because 'it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.'" *Robinson*, 247 So. 3d at 1226 (quoting *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976)). "It is improper and, ordinarily, reversible error to comment on the accused's post-*Miranda* silence." *Swinney*, 241 So. 3d at 608 (internal quotation marks omitted) (quoting *Quick v. State*, 569 So. 2d 1197, 1199 (Miss. 1990)). We have found however, that "such improper comments may amount to harmless error where evidence of the defendant's guilt is overwhelming." *Robinson*, 247 So. 3d at 1226.

¶50.    In *Gunn v. State*, the prosecutor asked the investigator, "[W]hen you advised the defendant of his rights, did he give you any statement?" *Gunn v. State*, 56 So. 3d 568, 571 (Miss. 2011). In response, the investigator said, "No, ma'am, he did not." *Id.* On appeal, Gunn argued that the above exchange violated his right against self-incrimination. *Id.* The *Gunn* Court found that the exchange was improper but that reversal was not warranted because it was harmless error. *Id.* at 572. Errors are harmless when "the same result would have been reached had [the error] not existed." *Id.* (internal quotation marks omitted) (quoting *Tate v. State*, 912 So. 2d 919, 926 (Miss. 2005)).

¶51.    In some instances, "reversal is not required, even though the prosecutor asked questions about the defendant's post-arrest silence." *Id.* (citing *Emery v. State*, 869 So. 2d 405, 409 (Miss. 2004)). "Such a circumstance is when the evidence weighs overwhelmingly

19

against the defendant." *Id.* (citing *Riddley v. State*, 777 So. 2d 31, 35-36 (Miss. 2000)). In *Gunn*, video documentation implicated Gunn, the comment was not used to impeach Gunn's testimony at trial, and the State did not revisit Gunn's post-*Miranda* silence in its closing argument; therefore, the error was harmless. *Id.*

¶52. Here, introducing the underlying facts and circumstances of the search warrant that contained a comment about Phillips's silence was error; however, it was harmless. As in *Gunn*, video documentation shows Phillips firing a gun in Brown's direction, and the shell casing found at the scene was a match for the gun later discovered in Phillips's truck. Further, Phillips did not testify at trial, so the comment about his post-*Miranda* silence was not used for impeachment, nor did the State mention it again in its closing argument. Finding the circumstances here similar to those in *Gunn*, we find that the error was harmless.

> III. *Whether cumulative error deprived Phillips of a fundamentally fair trial.*

¶53. Phillips argues that even if we find any of the above errors harmless, we should still reverse and remand for a new trial because "the cumulative effect of the errors violated his fundamental right to a fair trial."

¶54. "The cumulative error doctrine stems from the doctrine of harmless error, codified under Mississippi Rule of Civil Procedure 61." *Ross v. State*, 954 So. 2d 968, 1018 (Miss. 2007). Under the cumulative error doctrine, individual errors that do not warrant reversal alone may join with other errors to "make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Id.* (citing *Byrom v. State*, 863 So. 2d 836, 847 (Miss. 2003)). In considering whether individual errors are harmless or

20

prejudicial, "relevant factors to consider in evaluating a claim of cumulative error include whether the issue of innocence of guilt is close, the quantity and character of the error, and the gravity of the crime charged." *Id.* "[W]here there is not overwhelming evidence against a defendant, we are more inclined to view cumulative errors as prejudicial." *Id.*

¶55. Here, video documentation showed that Phillips shot toward Brown as Brown walked down the street away from the scene. Additionally, Brown told officers on the scene that night that Phillips had shot at him, and the shell casing found on the scene matched the gun recovered from Phillips's truck. The trial court committed harmless error only by allowing the underlying facts and circumstances from the search-warrant application to comment on Phillips's post-*Miranda* silence. Because there is overwhelming evidence of Phillips's guilt, this Court finds no cumulative error.

       *IV.     Whether Phillips's trial counsel was ineffective.*

¶56. Through a pro se supplemental briefing, Phillips claims that his "court appointed counsel's conduct and performance throughout the pre-trial and trial was deficient to the point that the results of the trial process cannot be relied upon." Phillips further asserts that due to his ineffective counsel, he was deprived of his right to a fundamentally fair trial. Specifically, Phillips argues that his counsel failed to investigate or call any witnesses, failed to make hearsay objections at trial, failed to file a pretrial motion to suppress the victim's statement, and made incriminating remarks toward him. In response, the State asserts that Phillips has not shown that his counsel was deficient nor that any claimed deficiency prejudiced his defense.

¶57. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (Miss. 2020) (alteration in original) (internal quotation marks omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016)). We address ineffective-assistance-of-counsel claims on direct appeal when "[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed." *Id.* (third alteration in original) (internal quotation marks omitted) (quoting *Read v. State*, 430 So. 2d 832, 842 (Miss. 1983)). Further, we have also "resolved ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that he claims are without merit." *Id.*; *See, e.g.*, *Swinney*, 241 So. 3d at 613; *Ashford v. State*, 233 So. 3d 765, 779-81 (Miss. 2017); *see also* M.R.A.P. 22.

¶58. Here, the State does not explicitly stipulate that the record is adequate; however, it does reply to and address Phillips's claim in its own supplemental brief. Moreover, we find that the record affirmatively shows that Phillips's ineffective-assistance-of-counsel claim is without merit. Thus, this Court fully resolves Phillips's claim on direct appeal.

¶59. To make a successful ineffective-assistance-of-counsel claim, Phillips must make two showings: "(1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense." *Ashford*, 233 So. 3d at 779 (citing *Puckett v. State*, 879 So. 2d 920, 935 (Miss. 2004) (citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674, 80 L. Ed. 2d 674 (1984))). "The Court strongly presumes that counsel's conduct falls

within the wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy." *Ross*, 288 So. 3d at 324 (internal quotation marks omitted) (quoting *Swinney*, 241 So. 3d at 613). Accordingly, "defense counsel is presumed competent." *Id.* (citing *Swinney*, 241 So. 3d at 613). "[E]ven [when] professional error is [proved], the Court must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Swinney*, 241 So. 3d at 613).

### A. Investigation and Witnesses

¶60. Phillips claims that his trial counsel failed to perform any pretrial investigation concerning the "logistics of the street location and time frame discussed throughout the case." Specifically, Phillips contends that the NOLA video footage of the scene that night contains a forty-four minute gap, from 2:59- 3:43 a.m., in which Brown is out of the camera frame and his location is unknown. But, this is a forty-four second time gap, not forty-four minutes.

¶61. Additionally, Phillips asserts that his trial counsel failed to thoroughly investigate the NOLA video footage and failed to "locate additional camera footage on other street cameras or NOLA cameras."

¶62. We have correctly "upheld decisions not to put on mitigation evidence where the decision resulted from a sound trial strategy." *Davis v. State*, 87 So. 3d 465, 469 (Miss. 2012) (internal quotation marks omitted) (citing *Havard v. State*, 988 So. 2d 322, 334 (Miss.

23

2008)). Counsel has a duty "to conduct a reasonable, independent investigation," *Davis*, 87 So. 3d at 469, "to interview potential witnesses[,] and to make independent investigation of the facts and circumstances of the case." *Ferguson v. State*, 507 So. 2d 94, 96 (Miss. 1987) (emphasis omitted). But "[a] defendant who alleges that trial counsel's failure to investigate constituted ineffectiveness must also state with particularity what the investigation would have revealed and specify how it would have altered the outcome of the trial[.]" *Woodward v. State*, 843 So. 2d 1, 18 (Miss. 2003) (alteration in original) (quoting *Cole v. State*, 666 So. 2d 767, 776 (Miss. 1995)).

¶63.    Here, Phillips claims that viewing footage from surrounding NOLA cameras in the area "could have exonerated" him and "possibly shown more of Mr. Brown's activities." First, Detective Daniels testified that while there are sixty NOLA cameras in Hattiesburg, she reviewed the footage from the Dabbs Street camera, which is the relevant area. Phillips does not provide any evidence contradicting that there are any other cameras in the relevant area that would have videoed the scene that night. Rather, he uses words of speculation such as "could have" and "possibly." Because Phillips does not "state with particularity" what any further investigation into the cameras would have revealed or "specify how it would have altered the outcome of the trial," Phillips's trial counsel cannot be found ineffective for failing to investigate. *Woodward*, 843 So. 2d at 18 (quoting *Cole*, 666 So. 2d at 776).

¶64.    Next, Phillips argues that his counsel was ineffective by failing to subpoena or call any witnesses, specifically Brown. "With respect to the overall performance of the attorney, 'counsel's choice of whether or not to file certain motions, call witnesses, ask certain

24

questions, or make certain objections fall within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim." **Douglas v. State**, 378 So. 3d 361, 378 (Miss. 2024) (internal quotation marks omitted) (quoting **Carr v. State**, 873 So. 2d 991, 1003 (Miss. 2004)).

¶65. Here, trial counsel's decision not to call Brown to testify was trial strategy. During the defense's closing argument, Phillips's counsel began by stating:

> Where is this scared little man? So scared to death. Crying, pacing back and forth for the police. That man shot at me. That bullet went flying right by my head. He almost killed me. What did I do to deserve this? Where is he? The State had to prove every element of their case. And guess what? [The prosecutor] has every investigator in his office. He has City of Hattiesburg. He has the Attorney General's office, Mississippi Bureau of Narcotics, the FBI if he wants them to go get this poor, little man and bring him to court so we can find out what really happened that night. You know, [the State's] entire case is based on nothing more than a fabrication.

From this introduction, it is evident that defense counsel's decision not to call Brown as a witness was trial strategy. Defense counsel used Brown's unavailability in court to point to the idea that the State did not call him because it had fabricated its case against Phillips. Further, Phillips again does not "state with particularity" what Brown's testimony would have revealed, nor does he "specify how it would have altered the outcome of the trial[.]" **Woodward**, 843 So. 2d at 18 (quoting **Cole**, 666 So. 2d at 776). Thus, we cannot find Phillips's trial counsel ineffective for failing to call witnesses.

### B. Objections

¶66. Phillips also urges that his counsel was ineffective by failing to file a pretrial motion to suppress Brown's statements on Truss's body-camera footage and by failing to object to

testimony about Brown's statements. Phillips specifically asserts that counsel failed to object to Brown's statements on Truss's body-camera footage when Brown said the bullet went right past his ear and when Brown identified Phillips at the scene. He argues that these statements were testimonial hearsay and that his counsel's failure to object deprived him of a fair trial.

¶67. We have previously held that "[t]he failure of counsel to make certain objections may fall within the ambit of trial strategy, and therefore may not give rise to a claim for ineffective assistance of counsel." *Morrow v. State*, 275 So. 3d 77, 85 (Miss. 2019) (alteration in original) (footnote omitted) (internal quotation marks omitted) (quoting *Conners*, 92 So. 3d at 686).

¶68. As previously discussed above, Brown's statements on Truss's body camera-footage were non-testimonial. The statements were made during an ongoing emergency, and the primary purpose of his statements to the officers that night was to respond to the ongoing emergency. Thus, Phillips's counsel cannot be found ineffective for failing to object to statements that were admissible.

### C. Counsel's Remarks

¶69. Finally, Phillips argues that certain questions and remarks his counsel made during their questioning of witnesses and closing arguments were "undermining and accusatory" and thus incriminated him.

¶70. Specifically, Phillips asserts that his counsel's questioning of Detective Chandra Daniels incriminated him. On cross-examination, defense counsel asked:

Q: Now, you have some testimony about seeing a brown truck go down the street is that correct?

A: Yes, ma'am.

Q: You didn't see it personally; you saw it on the video?

A: That's correct.

Q: Can you see from the video who's driving that brown truck?

A: As its leaving and going down Dabbs Street?

Q: Yes.

A: No ma'am, you can only see the back of it.

Q: Is it possible that Mr. Phillips could be in the truck?

A: Mr. Phillips was in the truck, yes, ma'am.

Q: But you didn't see Mr. Phillips in the truck; you're just using that from information you gathered before; is that correct?

A: That's correct.

. . . .

Q: But for the time it was coming down Dabbs Street, you're not able to see who's driving that truck?

A: That's correct.

In another instance, defense counsel asked Daniels if the truck from which the gun was recovered was the truck that Daniels had just identified Phillips as having driven. The detective answered in the affirmative, and defense counsel pointed out that the detective was not the officer to recover the gun and did not personally see Phillips in the brown truck.

27

¶71. Again, "we recognize a strong presumption that "[c]ounsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy[.]" *Greenleaf v. State*, 267 So. 3d 749, 752 (Miss. 2019) (first alteration in the original) (internal quotation marks omitted) (quoting *Givens v. State*, 967 So. 2d 1, 6 (Miss. 2007)). Here, it is clear that defense counsel's strategy by asking Daniels these questions was to make her admit that she had no personal knowledge of who was driving the brown truck or of the gun found in the truck. By doing this, defense counsel attempted to cast doubt on Daniels's testimony. Defense counsel's questions were plainly trial strategy.

¶72. Phillips also cites comments his counsel made during closing arguments. This Court has consistently held that closing arguments "fall[] under the ambit of defense counsel's trial strategy." *Havard*, 928 So. 2d 771, 796 (Miss. 2006) (citing *Pruitt v. State*, 807 So. 2d 1236, 1240 (Miss. 2002)). Defense counsel referred to Phillips as a "wild crazy man on the streets," and defense counsel admitted it was Phillips who was holding and fired the gun. Again, these comments were made as a part of the defense's trial strategy. In context, the comment calling Phillips a "wild crazy man" is clearly sarcastic. Defense counsel followed the comment by stating that Phillips complied with the officers that night, answering their questions at the scene. Admitting that Phillips fired a shot that night was also trial strategy. Counsel said, "There is a crime called discharging a firearm within city limits. . . . If you believe that [Phillips] did not commit an aggravated assault but still fired a gun in the city, you can find him guilty of that." Because Phillips was on video firing the shot, this admission was

28

harmless and an attempt to allow the jury to find Phillips guilty for a lesser charge. Because defense counsel's questions and comments were a part of trial strategy, we cannot find Phillips's counsel ineffective.

¶73. Phillips fails to show that his counsel's performance was deficient and that the deficiency prejudiced his defense. *Douglas*, 378 So. 3d at 378 (quoting *Strickland*, 466 U.S. at 687). Accordingly, Phillips's ineffective-assistance-of-counsel claim fails.

## CONCLUSION

¶74. Phillips's right to confrontation was not violated, commenting on Phillips's post-*Miranda* silence was harmless error, and cumulative error did not deprive Phillips of a fundamentally fair trial. Further, Phillips did not receive ineffective assistance of counsel. Consequently, we affirm the decision of the trial court.

¶75. **AFFIRMED.**

**KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, ISHEE, SULLIVAN AND BRANNING, JJ., CONCUR. RANDOLPH, C.J., NOT PARTICIPATING.**